ILLINOIS BELL TELEPHONE COMPA-
NY, doing business as Ameritech Illi-
nois, Plaintiff–Appellant,

v.

WORLDCOM TECHNOLOGIES, INC.,
et al., Defendants–Appellees.

No. 98–3150.

United States Court of Appeals,
Seventh Circuit.

Submitted Sept. 8, 1998.

Decided Sept. 10, 1998.*

Issued Sept. 23, 1998.

* The case was decided by a brief order on September 10, with a notation that an opinion would follow.

Demetrios G. Metropoulos (submitted on briefs), Theodore A. Livingston, Dennis G. Friedman, Mayer, Brown & Platt, Chicago, IL, for Plaintiff–Appellant.

Henry T. Kelly (submitted on briefs), Michael W. Ward, John F. Ward, Jr., O'Keefe, Ashenden, Lyons & Ward, Chicago, IL, for Defendant–Appellee WorldCom Technologies, Incorporated.

Frederick J. Artwick (submitted on briefs), Sidley & Austin, Chicago, IL, for Defendant–Appellee Teleport Communications Group, Incorporated.

Darryl M. Bradford (submitted on briefs), John R. Harrington, John J. Hamill, Jenner & Block, Chicago, IL, for Defendant–Appellee MCI Telecommunications Corporation.

John P. Kelliher (submitted on briefs), Office of Attorney General, Illinois Commerce Commission, Thomas R. Stanton, Illinois Commerce Commission, Chicago, IL, for Defendants–Appellees Dan Miller and Richard Kolhauser.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Local telecommunications carriers must provide reciprocal compensation for local calls that use each other's networks. 47 U.S.C. § 251(b)(5). If a subscriber of Company A calls a subscriber of Company B, then A must share with B some of the revenues A collects from its subscriber, to compensate B for the use of its facilities. Like many other provisions of the Telecommunications Act of 1996, this requirement is enforced by state agencies—in Illinois, by the Illinois Commerce Commission. Decisions of state agencies implementing the 1996 Act are reviewable in federal district courts. 47 U.S.C. § 252(e)(6). Ameritech sought review under this section of an order requiring it to compensate other companies for calls originating on Ameritech's network. Phone companies compensate each other under § 251(b)(5) and parallel agreements only when the call is received ("terminated" in the statutory argot) locally. Ameritech believes that a call placed to a nearby Internet ser-

vice provider (ISP) is a form of long-distance switching, because the ISP connects the caller to a world-wide communications network. In March 1998 the Illinois Commerce Commission rejected this contention and ordered Ameritech to pay past-due compensation (it had quit paying in July 1997 for calls that terminate with ISPs) and to calculate reciprocal compensation for the future on the assumption that calls to ISPs located within 15 miles of the originating customer's phone are local calls. Twenty other state commissions have come to the same conclusion; none has disagreed. The district court denied Ameritech's request that this decision be upset. Two other district courts, and one state court, likewise have enforced administrative decisions to·this effect. Thus the score at the moment is 25–0 against Ameritech and the other Baby Bells.

 Soon after Ameritech filed this suit,. the district court issued what it called a stay of the Commission's order. The judge did not conclude that the order would cause irreparable injury or that it was likely to be reversed, and said only that the court planned to expedite decision—which neither explains nor justifies interfering with the decision of a state agency in the interim. After rejecting Ameritech's position on the merits, the district court again forbade the Commission to enforce its order. About a week before this second stay was to expire, Ameritech asked us to issue a stay pending appellate review. Characterizing the state agency's decision as one to pay money, Ameritech wants us to treat it like a litigant that has suffered a money judgment in the district court. By posting a supersedeas bond, the appellant may obtain a stay of execution. Fed. R. Civ. P. 62(d). Ameritech offers to post a bond that will cover whatever it owes the other carriers. Yet it does not want the district court to stay execution of its own order, the domain of Rule 62. Stays of district court orders by the court of appeals are covered not by Fed. R. Civ. P. 62 but by Fed. R. App. P. 8. What Ameritech wants, however, is not a stay of anything the district court has done, but a postponement of the effective date of the Commission's order, which already has been postponed for almost six months by the district court. That is the

domain of Fed. R. App. P. 18 rather than of Rule 8 or Rule 62—if it is the domain of any rule at all. Appellate Rule 18 applies only to agency decisions that are directly reviewed by the court of appeals. For a stay of a state agency's decision, none of the rules applies directly, which means that the court normally would use general equitable principles that center around issues such as probability of success on the merits and irreparable harm. Nonetheless, Ameritech insists, we ought to analogize the Commission's order to a money judgment, use the approach of Civil Rule 62(d), and issue a stay without regard to the standards that govern the entry of interlocutory injunctions. That would not be sound, for two reasons.

First, the Commission issued "an order to do, rather than an order to pay," so the rationale as well as the text of Rule 62(d) is inapplicable. *Donovan v. Fall River Foundry Co.*, 696 F.2d 524, 526 (7th Cir.1982). The Commission did not liquidate the sum Ameritech owes the other carriers; it just ordered Ameritech to treat calls to ISPs the same way it treats calls to other phone subscribers for purposes of calculating both past and future compensation obligations. Rule 62(d) is designed to prevent execution on a litigant's assets while an appeal is pending, in exchange for which the appellant must obtain a bond that makes the victor indifferent between immediate and deferred collection. Execution on Ameritech's assets is not in the offing; compliance with the Commission's order is instead a condition of being a phone carrier in good standing, and remedies other than seizure of its assets lie in store if Ameritech disdains the order. The Commission's order tells Ameritech how to conduct future operations even as it calls for past-due compensation. Moreover, the order applies to all phone companies in Illinois; this is a system of *reciprocal* compensation, and other originating carriers must pay Ameritech when the ISP is an Ameritech customer, just as Ameritech must compensate them. Giving Ameritech an automatic stay while other carriers perform their obligations would set the system askew.

Second, and more important, Ameritech does not want a "stay" at all. It needs an interlocutory injunction. Civil Rule 62 and Appellate Rules 8 and 18 use "stay" to refer to a temporal decision within a unitary system. Does a judgment become effective when entered, or only after it has been affirmed on appeal? Civil Rule 62 says that a money judgment is effective when entered, unless a bond is posted, while a preliminary injunction, which must be secured by a bond posted by the *victor*, see Fed. R. Civ. P. 65(c), is immediately effective unless the court orders relief deferred. Appellate Rule 8 authorizes the court of appeals to review the district court's exercise of discretion about the timing of injunctive relief, and Appellate Rule 18 creates a power equivalent to Civil Rule 65(a) when the court of appeals is the first tier of judicial review. All of this makes sense as an allocation of authority within the national government. None of these rules prescribes the relation between federal and state authority. To justify a federal court's interdiction of a state's order, there must be a better reason than the aggrieved litigant's willingness to post a bond. Interference with the operation of a state program has costs that cannot be measured in money—and for which Ameritech does not offer to compensate the State of Illinois. The bond Ameritech proposes is limited to the payments owed to other telecommunications firms.

Ameritech uses the word "stay" to refer to all judicial orders that defer the effective date of some other order or decision. This is a common usage, because genuine stays have this effect, but it is not technically correct and has a potential to confuse. Although it is true that the stays authorized by Civil Rule 62 and Appellate Rules 8 and 18 delay the effectiveness of some other decision, it is not true that all delaying orders are "stays." A judicial order that prevents a statute, regulation, or administrative decision from taking effect is an injunction and must be justified under the standards commonly used to evaluate judicial interference with the decisions of the political branches of government. We have made this clear even for orders denominated "stays" by Appellate Rule 18. See *Commonwealth–Lord Joint*

*Venture v. Donovan,* 724 F.2d 67 (7th Cir. 1983); *Adams v. Walker,* 488.F.2d 1064 (7th Cir.1973). To satisfy this standard the applicant must show that the probability of success on the merits is sufficiently high—or the injury from the enforcement of the order sufficiently great—to warrant a conclusion that the balance of error costs tilts in favor of relief. In other words, the applicant must show that the costs of false negatives (the costs of denying interlocutory relief, when the applicant ultimately prevails on the merits) exceed the costs of false positives (the costs of granting interim relief, when the applicant eventually loses on the merits). See *American Hospital Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589, 593–94 (7th Cir.1986); *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433–34 (7th Cir. 1986). When the opposing party is the representative of the political branches of a government the court must consider that all judicial interference with a public program has the cost of diminishing the scope of democratic governance.

In this case the costs of false negatives ("irreparable injury," to use the traditional term) are negligible. Ameritech easily can recover the money if it prevails on appeal. All of the other carriers are solvent, and Ameritech can recoup by setoff in the ongoing reciprocal-compensation program. The costs of false positives also are likely to be low—for the defendants easily can finance their operations in the interim without resort to Ameritech's contributions—though they are not zero. Perhaps Ameritech anticipates that it will not be required to compensate the defendants fully for the time value of money; in that event delay injures its rivals and hampers competition. Even if Ameritech pays the market cost of capital during the period of delay, so that the other carriers are indifferent between money now and money later, delay impedes the ability of the Illinois Commerce Commission to implement a policy of reciprocal compensation. Delay effectively moves regulatory power from the state commission to the federal court (or to Ameritech, which can determine when orders take effect). Although such transfers may be of little moment one case at a time they are

disruptive when repeated over many cases—and the struggle in the communications business between the Baby Bells and their rivals is a repeat-play game in markets, agencies, and courts alike. Interlocutory relief against the Commission's order therefore depends on a showing that the applicant is likely to prevail on the merits; because the costs of false negatives are so low, Ameritech must show a very high probability of success. But it has not attempted to do this. Its pitch is that we should disregard the merits and delay the Commission's order automatically. Because we reject that contention, the application for a "stay" is

DENIED.