**WISCONSIN BELL, INC. d/b/a Ameritech Wisconsin, Plaintiff,**

**and**

**Mid–Plains, Inc. and Chorus Communications Group, Ltd., Plaintiffs–Intervenors,**

**v.**

**Ave M. BIE, Robert M. Garvin, and Joseph P. Mettner, Commissioners of the Public Service Commission of Wisconsin (In Their Official Capaci-**

ties and Not as Individuals),[1] Defendants,

and

Worldcom, Inc., TDS Metrocom, Inc., and Time Warner Telecom of Wisconsin, L.P., Defendants–Intervenors.

No. 00–C–0755–C.

United States District Court,
W.D. Wisconsin.

Oct. 17, 2001.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), commissioner Robert M. Garvin is substituted for his predecessor in office.

Jordan J. Hemaidan, Madison, WI, for plaintiffs.

Mary M. Stevens, Public Service Commission of WI, Madison, WI, for defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil case brought pursuant to the Telecommunications Act of 1996. Plaintiffs Ameritech and Mid–Plains, Inc. (a subsidiary of plaintiff Chorus Communications Group, Ltd.) challenge an order of the Public Service Commission of Wisconsin. The suit is not brought against the commission as an entity, but against defendant commissioners Ave M. Bie, Robert M. Garvin and Joseph P. Mettner in their official capacities.

This case is before the court now on defendant commissioners' motion to dismiss for lack of subject matter jurisdiction and plaintiffs-intervenors Mid–Plains and Chorus's motion to submit additional evidence. Although Worldcom, Inc., TDS Metrocom, Inc. and Time Warner Telecom of Wisconsin, L.P. have intervened as defendants, they join plaintiffs in opposing defendant commissioners' motion to dismiss. Because I find that the court has subject matter jurisdiction under § 252(e)(6) of the Act to hear plaintiffs' claims, the commissioners are not immune from suit under the Eleventh Amendment and the case is ripe for judicial review, defendant commissioners' motion to dismiss will be denied. Because I find that plaintiffs-intervenors Mid–Plains and Chorus's reasons for submitting additional evidence are no longer relevant, their motion will also be denied.

There are few, if any, disputed facts at this stage of the litigation. Rather, plaintiffs contend that an order of the commission relating to compensation paid by local telephone carriers for calls placed to Internet service providers is contrary to and preempted by federal law, including certain regulations promulgated by the Federal Communications Commission. (I will refer to the Public Service Commission of Wisconsin as "the commission" and to the Federal Communications Commission as "the FCC.") Before reaching the substance of the parties' motions, a brief description of the relevant provisions of the Telecommunications Act and the orders of the commission and the FCC is necessary.

## BACKGROUND

The Telecommunications Act of 1996, Pub.L. 104–104, 110 Stat. 56, (codified in scattered sections of Title 47 of the United States Code), sought to inject competition into the local telephone service industry, a market dominated traditionally by a handful of firms. To move toward a competitive model, Congress forced existing local

exchange carriers to share their equipment and services with new entrants. The linking of a new, competing entrant to an existing or "incumbent" carrier's equipment is known as "interconnection." Sections 251 and 252 of the Act establish a detailed federal regulatory scheme governing the process of interconnection. Congress required interconnection by imposing specific duties on incumbent carriers. For example, incumbents are obliged to negotiate in good faith with new market entrants requesting interconnection. 47 U.S.C. § 251(c)(1). Incumbents and new entrants may enter into interconnection agreements voluntarily. § 252(a)(1). Failing that, a party to an interconnection negotiation may petition the state's utility commission to mediate. § 252(a)(2). Finally, if negotiations are unsuccessful after 135 days, a party may petition the state commission to arbitrate unresolved matters. § 252(b)(1).

Section 251(b)(5) sets out an interconnection obligation shared by all local exchange carriers to establish "reciprocal compensation arrangements for the transport and termination of telecommunications." As incumbent and competing local exchange carriers have interconnected their networks, some calls originating on one carrier's network are completed or "terminated" on another carrier's network. For instance, if a subscriber of carrier A calls a subscriber of carrier B, the call originates on carrier A's equipment but will be terminated by carrier B's equipment. Absent reciprocal compensation arrangements, carrier A would charge its customer for the call, but carrier B would receive no compensation for the use of its equipment in terminating the call. Reciprocal compensation is typically paid on a per minute basis, and insures that both carriers are compensated for intercarrier calls. The FCC, among others, assumed that reciprocal compensation among carriers would be generally balanced as calls moved in both directions over the interconnected networks.

According to the FCC, the explosion in Internet usage has upset the assumption that reciprocal compensation among carriers would be more or less balanced. This is because calls to Internet service providers, which are frequently lengthy in duration, "flow[ ] exclusively in one direction," meaning that "money in a reciprocal compensation regime" does so as well. *In the Matter of Implementation of the Local Competition Provisions in Telecommunications Act of 1996, Intercarrier Compensation for ISP–Bound Traffic,* CC Docket Nos. 96–98 & 99–68, Order on Remand and Report and Order ¶¶ 20–21, FCC 01–131, 2001 WL 455869 (April 27, 2001). This led to "an opportunity for regulatory arbitrage" as new carriers rushed to sign up Internet service providers in order to obtain a steady flow of "reciprocal" compensation that in fact required little in the way of reciprocity. *Id.*

Local exchange carriers who found themselves on the wrong end of this one-way flow of compensation sought relief by arguing that they were not required to pay reciprocal compensation for calls destined for Internet service providers. Relying on FCC regulations limiting the scope of the reciprocal compensation requirement to *local* telecommunications traffic only, 47 C.F.R. § 51.701(a), these carriers argue that calls to Internet service providers are not local calls at all, but rather involve the continuous transmission of information nationally and internationally across the global network that is the Internet. Therefore, they argue, such calls are not subject to reciprocal compensation payments. Predictably, carriers receiving reciprocal compensation for terminating Internet calls maintain that such calls are local because internet users typically dial local numbers to access their Internet ser-

vice provider. In recent years, numerous state public service commissions and the FCC have joined in the debate.

A very abbreviated history of the debate as it pertains to this suit could begin on November 8, 2000, when the Public Service Commission of Wisconsin issued an order declaring that "dial-up Internet traffic is a local telecommunications service in its entirety" and that such calls are "a type of local telecommunications traffic for purposes of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701(a)" and thus subject to reciprocal compensation. *Order Establishing a Method for Pricing Reciprocal Compensation in Interconnection Agreements,* Docket 05–TI–283 (November 8, 2000). The commission's order triggered this suit, filed on December 28, 2000, in which plaintiffs argue that the order is contrary to and preempted by federal law. On April 27, 2001, the FCC issued its order *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 Intercarrier Compensation for ISP–Bound Traffic,* CC Docket Nos. 96–98 & 99–68, Order on Remand and Report and Order ¶¶ 20–21, FCC 01–131, 2001 WL 455869 (April 27, 2001), in which it concluded among other things that "ISP-bound traffic is not subject to the reciprocal compensation provisions of section 251(b)(5)." The briefing schedule in this case was amended in the wake of the FCC's order to give all parties an opportunity to assess its impact. However, the parties remain at loggerheads and the commissioners have proceeded with the motion to dismiss now before the court.

## I.   MOTION TO DISMISS

Defendant commissioners argue that the court has no authority to hear this case because it lacks subject matter jurisdiction. They deny plaintiffs' contention that subject matter jurisdiction is supplied both by the Telecommunications Act itself, 47

U.S.C. § 252(e)(6), and by the general federal question jurisdiction statute, 28 U.S.C. § 1331. Defendant commissioners also argue that the Eleventh Amendment immunizes them from suit in federal court. Finally, they argue that the case before the court is not ripe for judicial review.

### A.   *47 U.S.C. § 252(e)(6)*

■ Noting that the Telecommunications Act has thrust both the FCC and the federal courts into the previously state-regulated local phone service market, the Court of Appeals for the Seventh Circuit has observed that "the $64,000 question" is just how far into the regulatory scheme the federal presence reaches. *Illinois Bell Telephone Co. v. Worldcom Technologies, Inc.,* 179 F.3d 566, 568 (7th Cir.1999), *cert. granted sub nom. Mathias v. WorldCom Technologies, Inc.,* 532 U.S. 903, 121 S.Ct. 1224, 149 L.Ed.2d 135 (2001). Defendant commissioners' contention that this court lacks subject matter jurisdiction to hear plaintiffs' claims requires the court to grapple with just that question.

In its order, the commission purports to "establish[ ] a method for determining the appropriate compensation for Internet traffic that individual parties will then apply in future negotiations and arbitrations of interconnection agreements in Wisconsin." Commission Order at 2. The order addresses the question "whether dial-up Internet access is a type of local telecommunication service subject to the reciprocal compensation requirement of § 251(b)(5) [of the federal act]." *Id.* at 5. It answers that question in the affirmative. However, in their motion to dismiss, defendant commissioners maintain that in issuing the order, the commission acted solely under state law authority, rather than under §§ 251 and 252 of the Act. Section 252(e)(6) of the Act, which authorizes federal court review of state commission actions, provides

In any case in which a State commission makes *a determination under this section,* any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

47 U.S.C. § 252(e)(6) (emphasis added). Defendant commissioners argue that the commission cannot make "a determination under" § 252 unless a petition for arbitration is filed under § 252(b), a petition for approval of a voluntary agreement is filed for approval under § 252(e)(1) or a Statement of Generally Available Terms and Conditions for interconnection is filed for approval under § 252(f). According to defendant commissioners, the order that plaintiffs challenge was not issued in response to any such filing, but rather is a general "policy order regarding a methodology for pricing" to be applied in the future by arbitration panels considering reciprocal compensation. Dfts.' Br. in Supp. of Mot. to Dismiss, dkt. # 23, at 6–7. The commissioners therefore maintain that the order cannot be a determination under § 252 of the Act and, accordingly, the court lacks jurisdiction under § 252(e)(6) to review the order.

As an initial matter, defendant commissioners' assertion that the order was issued solely pursuant to state law is problematic because the order's first "conclusion of law" identifies 47 U.S.C. §§ 251 and 252 among the statutes that confer jurisdiction on the commission to issue the order. Commission Order at 2. Even absent that admission, several Seventh Circuit decisions regarding the scope of federal court review under § 252(e)(6) suggest the commission's order amounts to a "determination" under § 252 that is reviewable in federal court.

*Illinois Bell,* 179 F.3d 566, involved a challenge to an order of a state commission regarding reciprocal compensation for internet-bound traffic. In that case, an incumbent carrier subject to an interconnection agreement had stopped paying reciprocal compensation for calls to Internet service providers, asserting such calls were local. In response, the other parties to the agreement filed complaints with the Illinois Commerce Commission. The Illinois commission interpreted the language of the parties' interconnection agreement to require reciprocal payments for Internet calls because, in the commission's view, there was no basis for treating Internet calls differently from other local calls. Unhappy with this decision, the incumbent carrier filed suit in federal court, contending that the Illinois commission's order interpreting the carriers' agreement was contrary to federal law. The Illinois commissioners argued that the court lacked subject matter jurisdiction because "the scope of review under § 252(e) is limited to review of an 'agreement'; nowhere ... is a 'federal district court authorized to review an *order* of a state commission, the result of complaints filed with the state commission under state law.'" *Id.* at 570. After surveying the language of § 252(e)(6), the court rejected that argument because it had concluded "flatly" in an earlier opinion that "'[d]ecisions of state agencies implementing the 1996 Act are reviewable in federal district courts.'" *Id.* (quoting *Illinois Bell Telephone Co. v. WorldCom Technologies, Inc.,* 157 F.3d 500, 501 (7th Cir.1998)). Accordingly, the court's subject matter jurisdiction under § 252(e)(6) was not limited to review of the agreement itself, but allowed the court to decide whether the Illinois Commerce Commission violated federal law "in determining that under the agreements the parties intended that calls to Internet service providers would be subject to reciprocal compensation." *Id.* at 571.

In *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323 (7th Cir.2000), the Court of Appeals for the Seventh Circuit considered a similar argument by the Public Service Commission of Wisconsin that § 252(e)(6) "does not confer jurisdiction on federal courts to review enforcement or other post-approval determinations made by state commissions" but instead "limits federal jurisdiction to reviewing a state commission's approval or rejection of an interconnection agreement or an [Statement of Generally Available Terms and Conditions]." The court "declined to read subsection 252(e)(6) so narrowly." *Id.* at 337–38. Rather, the court held that § 252(e)(6) "confers federal jurisdiction to review 'state commission rulings on complaints *pertaining to* interconnection agreements.'" *Id.* at 338 (emphasis added) (quoting *Southwestern Bell Telephone Co. v. Public Utility Comm'n*, 208 F.3d 475, 481 (5th Cir.2000)). The court also cited its previous decision in *Illinois Bell* for the proposition that § 252(e)(6) grants federal courts jurisdiction "to review 'actions' by state commissions that *relate to* interconnection agreements." *Id.* (emphasis added).

On the basis of these cases, defendant commissioners concede, as they must, that in the Seventh Circuit, courts have jurisdiction under § 252(e)(6) to review orders of state commissions interpreting or enforcing interconnection agreements. However, defendant commissioners emphasize that the order at issue here does not actually interpret or enforce any existing interconnection agreement, distinguishing this case from *Illinois Bell* and *MCI*. According to the commissioners, only "[w]hen the Order is applied in an arbitration [will] the governing law in this circuit ... apply." Dfts.' Reply Br. in Supp. of Mot. to Dismiss, dkt. # 36, at 2. It is true that the commission's order was not issued in the course of approving or interpreting a particular interconnection agreement. Rath-

er, the docket that resulted in this order was opened on the commission's own motion, prompted by past complaints from several local exchange carriers regarding the proper classification of Internet-bound traffic. However, the commissioners' order "direct[s] future arbitration panels to apply a particular methodology for pricing reciprocal compensation." Dfts.' Br. in Supp. of Mot. to Dismiss, dkt. # 23, at 17. Under methodology, arbitration panels considering reciprocal compensation are to treat Internet-bound traffic as "a type of local telecommunications traffic for purposes of 47 U.S.C. § 251(b)(5)." Commission Order at 3. Therefore, every arbitration panel convened pursuant to § 252 that considers the issue of reciprocal compensation will be "direct[ed]" to mandate reciprocal payments for Internet-bound traffic. The commissioners contend that although an arbitration panel's application of this methodology is a determination under § 252, the commission's order mandating that all arbitration panels apply the methodology is not. For purposes of federal subject matter jurisdiction under § 252(e)(6), this is a distinction without a difference.

Just as in *Illinois Bell*, 179 F.3d at 571, the court had jurisdiction to review a state commission's interpretation of an interconnection agreement to require reciprocal compensation for Internet calls, this court has jurisdiction to review a far more sweeping state commission order directing *all* arbitration panels considering reciprocal compensation to require reciprocal payments for Internet calls. The commissioners recognize that reciprocal compensation is "a key feature of every interconnection agreement," that their order "cannot be applied outside a § 252 agreement" and that their order directs arbitration panels considering reciprocal compensation to classify Internet-bound calls as local traffic subject to reciprocal payments. Dfts.' Br.

in Supp. of Mot. to Dismiss, dkt. # 23, at 3, 13. Therefore, the order is an " 'action' by [a] state commission[ ] that relate[s] to interconnection agreements" that is reviewable in federal court under § 252(e)(6). *MCI,* 222 F.3d at 338; *see also AT & T Corp. v. Iowa Utilities Board,* 525 U.S. 366, 378 n. 6, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) ("[T]here is no doubt ... that if the federal courts believe a state commission is not regulating in accordance with federal policy they may bring it to heel."). Because I conclude that this court has subject matter jurisdiction under 47 U.S.C. § 252(e)(6), I need not consider plaintiffs' argument that 28 U.S.C. § 1331 supplies an alternate basis for jurisdiction.

### B. *Eleventh Amendment Immunity*

■ Defendant commissioners argue that the Eleventh Amendment immunizes them from suit in federal court. However, they acknowledge that if the order amounts to a determination under § 252 reviewable in federal court under § 252(e)(6), then "the Commissioners would have waived their Eleventh Amendment immunity by participating in the procedures in § 252, and their activities would also be subject to the doctrine of *Ex Parte Young* " under Seventh Circuit precedent binding on this court. Dfts.' Br. in Supp. of Mot. to Dismiss, dkt. # 23, at 68; *MCI,* 222 F.3d at 345, 348 (state's decision to exercise regulatory authority granted to it under §§ 251 and 252 of the Act "constitutes a waiver of its [Eleventh Amendment] immunity from suit in federal court" and suits by carriers seeking injunctive relief for alleged ongoing violations of the Act "fit squarely within the traditional framework of *Ex Parte Young* "). Having concluded that the commission's order is a determination under § 252 reviewable in federal court under § 252(e)(6), I conclude that defendant commissioners' Eleventh Amendment claim is not viable. Of course, the last word on this issue may be forthcoming from the Supreme Court, which has agreed to review the question whether a state commission's participation in the federal regulatory scheme prescribed by the Act constitutes a waiver of its Eleventh Amendment immunity. *Mathias v. WorldCom Technologies, Inc.,* 532 U.S. 903, 121 S.Ct. 1224, 149 L.Ed.2d 135 (2001). However, until the Supreme Court issues a ruling on that question, I am bound to apply existing circuit precedent.

### C. *Ripeness*

Defendant commissioners also challenge the court's subject matter jurisdiction on the ground that this case is not yet ripe for review. However, most of their arguments in support of this contention go to the merits of the underlying case and the apparent dispute between the commission's order, which purports to establish that "dial-up Internet access is a type of local telecommunications service subject to the reciprocal compensation requirement of § 251(b)(5)," commission Order at 5, and the FCC's order, which provides that "ISP-bound traffic is not subject to the reciprocal compensation provisions of section 251(b)(5)." FCC Order at 17 ¶ 35. In contending that this case is not ripe, defendant commissioners essentially suggest that at least in some circumstances the two orders can be implemented harmoniously. They may be correct, but the issue whether the two orders can co-exist peacefully goes straight to the merits of plaintiffs' claims that the commission's order is contrary to and preempted by federal law. This poses a problem because many of the specifics of defendant commissioners' ripeness argument involve interpretations of the FCC order that were outlined for the first time in their reply brief. This is understandable, in light of the fact that the FCC's order was issued after the commissioners filed their initial brief in support of their motion to dismiss. As a result, however, plaintiffs have not had an opportuni-

ty to respond to the commissioners' interpretations of the FCC order.

■ In any case, I am satisfied that the case is ripe for review. "In deciding whether an agency's decision is, or is not, ripe for judicial review, the Court has examined both the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'" *Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (citation omitted). This involves considering "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Id.*

■ Plaintiffs will suffer hardship if review is delayed because the commission's order affects their ability to plan, finance and negotiate new interconnection agreements. The Act imposes on incumbent local exchange carriers like plaintiffs the duty to negotiate interconnection agreements in good faith, including the provisions in those agreements regarding reciprocal compensation. 47 U.S.C. § 251(c)(1). If Internet traffic is subject to reciprocal compensation, as the commission has concluded and which plaintiffs allege is contrary to federal law, plaintiffs' negotiating posture will be affected, as will their ability to plan for and finance the costs associated with originating Internet-bound traffic. In addition, judicial intervention does not appear likely to interfere with further administrative action, as defendant commissioners concede that "administrative action appears to be complete at this time," Dfts.' Br. in Supp. of Mot. to Dismiss, dkt. # 23, at 19, and because it appears that arbitration panels considering the issue of reciprocal compensation have no discretion to deviate from the substance of the commission's order. Finally, it does not appear that the court would benefit from further factual development of the issues involved. Plaintiffs' complaints challenge a decision that defendant commissioners treated as a pure question of law. Commission Order at 3 (determination that Internet-bound traffic "is a type of local telecommunications traffic for purpose of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701(a)" listed as one of two conclusions of law). When a question is "predominantly legal," there is generally no need to await further factual development. *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Accordingly, I find that this case is ripe for judicial review.

## II. MOTION TO SUBMIT ADDITIONAL EVIDENCE

Plaintiffs-intervenors Mid–Plains and Chorus Communications seek to submit additional evidence. They argue that the evidence is "necessary, in part, to oppose Defendant Commissioners' Motion to Dismiss and, in part, for a full and just adjudication of Mid–Plains' claim made under section 253 of the Telecommunications Act of 1996." Plts.' Mot. to Submit Additional Evidence, dkt. # 37, at 2. On August 21, 2001, pursuant to a stipulation entered into by the parties, I dismissed plaintiffs-intervenors Mid–Plains and Chorus's claim under § 253 of the Act. Stipulation and Order for Dismissal of Plts.' Mid–Plains and Chorus' 47 U.S.C. § 253(a) Claim Only, dkt. # 47. Accordingly, in briefing this motion, plaintiffs-intervenors Mid–Plains and Chorus indicated their desire to withdraw their motion to submit additional evidence to the extent they were seeking to submit evidence for the purpose of sup-

porting their § 253 claim. As for the additional evidence pertaining to defendant commissioners' motion to dismiss, I did not consider it in deciding to deny that motion. Therefore, because plaintiffs-intervenors Mid–Plains and Chorus's § 253 claim has been dismissed and because defendant commissioners' motion to dismiss will be denied, the motion to submit additional evidence will be denied as moot.

## ORDER

IT IS ORDERED that

1. The motion to dismiss of defendant commissioners Ave M. Bie, John H. Farrow and Joseph P. Mettner is DENIED.

2. The motion to submit additional evidence of plaintiffs-intervenors Mid–Plains, Inc. and Chorus Communications Group, Ltd. is DENIED.