In re LORAZEPAM & CLORAZEPATE ANTITRUST LITIGATION.

St. Charles Hospital and Rehabilitation Center, Plaintiff,

v.

Mylan Laboratories, Inc. et al., Defendants.

Advocate Health Care, et al., Plaintiffs,

v.

Mylan Laboratories, Inc. et al., Defendants.

MDL Docket No. 1290(TFH).
Misc. No. 99ms276(TFH).
Civ. No. 99–0790(TFH).

United States District Court, District of Columbia.

April 15, 2002.

Michael David Hausfeld, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Ellen Schiff Cooper, Office of the Attorney General/MD, Baltimore, MD, for St. Charles Hospital and Rehabilitation Center.

Mary Nicole Strimel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for Advocate Health Care.

Thomas Campbell, Gardner, Carton & Douglas, Chicago, IL, for Advocate Health Care, Dik Drug Co. and Harvard Pilgrim Health Care, Inc.

Diane Kelleher, U.S. Department of Justice, Civil Division, Federal Programs Branch, Steven A. Newborn, Joseph Jay Simons, Clifford, Chance, Rogers & Wells, L.L.P., Ken Boss, Washington, DC, Robert N. Kravitz, Paul, Weiss, Rifkind, Wharton & Garrison, Linda P. Nussbaum, Pomerantz, Haudek, Block & Grossman, Hollis L. Salzman, Goodkind, Labaton, Rudoff & Sucharow, Martin Seidel, David Park, James Miller, Kevin J. Arquit, John K. Carroll, Clifford, Chance, Rogers & Wells, L.L.P., Michael O. Ware, Mayer, Brown, Rowe & Maw, New York City, Seth E. Brown, Mor-

**2**

rison & Foerster, L.L.P., McLean, VA, Andrew S. Marovitz, Mayer, Brown & Platt, John F. Kinney, Freeman, Freeman & Salzman, P.C., Chicago, IL, Stephen L. Klimjack, Jackson, Taylor, Martino & Hedge, Mobile, AL, Meredyth Smith Andrus, Office of the Attorney General/MD, Antitrust Division, Baltimore, MD, Craig G. Harley, Atlanta, GA, Barron Grier, Columbia, SC, Robert S. Schachter, Zwerling, Schachter & Zwerling, Seattle, WA, for Mylan Laboratories, Inc.

Jonathan R. Tuttle, Debevoise & Plimpton, Washington, DC, Timothy K. Beeken, Charles D. Atkins, Debevoise & Plimpton, New York City, for Cambrex Corp and Profarmaco S.R.L.

Peter Dean Isakoff, David A. Hickerson, Weil, Gotshal & Manges, L.L.P., Washington, DC, for Gyma Laboratories of America, Inc.

Sidney Samuel Rosdeitcher, Michael P. Bowen, Lewis Farberman, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for SST Corp.

David Hensler, Hogan & Hartson, L.L.P., for and Mylan Laboratories, Inc. and UDL Laboratories, Inc.

### MEMORANDUM OPINION

HOGAN, Chief Judge.

Pending before the Court are three contested motions: (1) Defendants' motion to stay all further proceedings pending resolution of their Federal Rule of Civil Procedure 23(f) petition currently pending before the Court of Appeals; (2) Class Plaintiffs' motion to quash subpoenas issued by Defendants to absent class members; and (3) Class Plaintiffs' motion to bifurcate trial pursuant to Federal Rule of Civil Procedure 42(b). Upon careful consideration of each motion, the oppositions and replies thereto, and the entire

record herein, the Court will grant Defendants' motion to stay all matters pending a decision from the Court of Appeals on the pending Rule 23(f)ʾpetition and thus hold in abeyance Class Plaintiffs' motions.

### I. BACKGROUND

The four named Class Plaintiffs in this consolidated MDL action—Advocate Health Care ("Advocate"), St. Charles Hospital and Rehabilitation Center ("St. Charles"), Dik Drug Company ("Dik Drug"), and Harvard Pilgrim Health Care, Inc. ("Harvard Pilgrim")—have brought this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a class of direct purchasers of generic anti-anxiety drugs known as lorazepam and clorazepate during the period January 12, 1998 through the present. They claim that Defendants—Mylan Laboratories, Inc. ("Mylan Laboratories"), Mylan Pharmaceuticals, Inc. ("Mylan Pharmaceuticals"), UDL Laboratories, Inc. ("UDL"), Cambrex Corporation ("Cambrex"), Profarmaco S.R.L. ("Profarmaco"), Gyma Laboratories of America, Inc. ("Gyma"), and SST Corporation ("SST")—conspired to monopolize, monopolized, and fixed prices of lorazepam and clorazepate, in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. They further claim that as a result of Defendants' anticompetitive behavior, they paid much higher prices than they would have paid in a competitive market and thus seek treble-damages under the Clayton Act, 15 U.S.C. § 15, for the overcharges they paid.[1]

On July 2, 2001, the Court denied Defendants' motion to dismiss this class action and granted the plaintiffs' motion for class certification. *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12 (D.D.C.2001).[2]

---

1. For a more detailed discussion of the underlying antitrust allegations and explanation of the generic drug industry and the two generic drugs at issue in this case, see *FTC v. Mylan Labs., Inc.*, 62 F.Supp.2d 25, 32–35 (D.D.C.1999), *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 14–17 (D.D.C.2001), and *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 373–75 (D.D.C.2002).

2. In support of their motion to dismiss, Defendants primarily relied upon two standing arguments. First, they argued that direct purchaser plaintiffs had no standing in the unique context of this case in which the FTC had successfully petitioned for disgorgement under section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), and in which direct purchasers contemporaneously seek treble damages pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15. *In*

Defendants then filed a petition for review with the Court of Appeals, pursuant to Federal Rule of Civil Procedure 23(f), on July 12, 2001. The Court of Appeals referred the petition to a merits panel, directing the parties to brief whether the Court properly granted class certification as well as whether the petition should be granted. 9/28/01 Order. The Court of Appeals heard oral argument from the parties on March 12, 2002, but to date has not rendered a decision on Defendants' petition.

On December 27, 2001 and on January 25, 2002, this Court approved the parties' jointly filed stipulations staying discovery and the filing of motions (beyond the three motions currently at issue) until January 31, 2002 to permit them to pursue settlement. On February 4, 2002, however, the parties provided written notice to the Court that they had not settled the case, asking for a resolution of the instant motions.

## II. DISCUSSION

■ Because Defendant's motion to stay seeks to "stay all further proceedings in this matter" pending resolution of their Rule 23(f) petition, which includes Class Plaintiffs' motions to quash and bifurcate, the Court will address it first. Under Rule 23(f), "[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders." *Id.* The Court of Appeals for this Circuit has not yet had the opportunity to articulate a standard for evaluating a request for a stay in conjunction with a petition for interlocutory review of class certification under Rule 23(f). The Second Circuit Court of Appeals, however, recently stated that issuance of a stay under Rule 23(f) is discretionary, and it would not issue a stay "unless the likelihood of error on the part of the district court tips the balance of hardships in favor of the party seeking the

stay." *In re Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 140 (2d Cir.2001). The Seventh Circuit Court of Appeals has similarly stated that "[a] stay would depend on a demonstration that the probability of error in the class certification decision is high enough that the costs of pressing ahead in the district court exceed the costs of waiting." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832 (7th Cir.1999). The same court further explained that "[t]his is the same kind of question that a court asks when deciding whether to issue a preliminary injunction or a stay of an administrative decision." *Id.* (citing *Illinois Bell Telephone Co. v. WorldCom Technologies, Inc.*, 157 F.3d 500 (7th Cir.1998); *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593–94 (7th Cir.1986)).[3] Following the guidance of such cases, the Court believes that whether or not a stay should be granted in the context of a pending Rule 23(f) petition is a discretionary matter to be informed by a flexible application of the well-established, four-factor balancing test employed to consider preliminary injunctive relief and other stays pending appeal in this Circuit—(1) whether there is a substantial likelihood that the movant will succeed on the merits of the claims/appeal; (2) whether the movant will suffer irreparable injury if an injunction/stay does not issue; (3) whether others will suffer harm if an injunction/stay is granted; and (4) whether the public interest will be furthered by an injunction/stay. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958); *see Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C.Cir.1998); *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 673–74 (D.C.Cir.1985); *McSurely v. McClellan*, 697 F.2d 309, 317 (D.C.Cir.1982); *see also, e.g., Daniels v. City*

re *Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. at 17. Second, Defendants alternatively contended that even if direct purchasers had standing, Class Plaintiffs had not sufficiently shown that they were direct purchasers. *Id.* at 22.

**3.** The First, Fourth, and Eleventh Circuits have adopted nuanced versions of a similar standard

of review for Rule 23(f) petitions as articulated by the Seventh and Second Circuits, *see Waste Mgmt., Holdings, Inc. v. Mowbray*, 208 F.3d 288, 292–94 (1st Cir.2000); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142–46 (4th Cir.2001); *Prado–Steiman v. Bush*, 221 F.3d 1266, 1271–77 (11th Cir.2000), but have not articulated the applicable standard for considering a stay.

*of New York,* 138 F.Supp.2d 562, 564 (S.D.N.Y.2001) (applying similar four factors to stay request pending ruling on class certification appeal under Rule 23(f)); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.,* No. 98CV1492, 2000 WL 1424931, at *2 (finding, in the context of a pending Rule 23(f) certification appeal, that the "balance of harm weighs in favor of granting a stay").

■ Respecting the merits of their appeal, Defendants point out that they have raised a dispositive issue before the Court of Appeals by arguing that direct purchasers lack standing in this case. *See supra* note 2. That is, "[s]hould the D.C. Circuit hold that conferring antitrust standing in this case on ultimate consumers, rather than direct purchasers, would best preserve the federal antitrust policies that the Supreme Court articulated in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), this case will be over." Defs.' Reply at 6. Such a decision would moot every deposition taken, motion argued, document produced, and interrogatory answered between now and then. Defendants also argue that even if direct purchasers have standing in this case, this Court should not have certified the proposed class "because as currently constituted, it creates a substantial risk of duplicative recoveries for the same alleged 'overcharge' as between first-level purchasers, such as wholesalers, that bought from Mylan, and second-level purchasers, such as hospitals, that did not." Defs.' Mot. at 3. They believe that the resolution of these issues either will dispose of the case or at least greatly impact its proceedings and thus ask for a stay in order to conserve resources and to avoid expensive, burdensome discovery.

Class Plaintiffs rejoin that Defendants are "highly unlikely to prevail" on the merits of the *Illinois Brick* issue, because the Court of Appeals as a substantive matter likely will not create a new exception to the direct purchaser rule under *Illinois Brick* and because the Court of Appeals as a procedural matter is without jurisdiction to consider such a standing argument bootstrapped to a class certification appeal pursuant to Rule 23(f). Pls.' Opp'n at 11–12. Moreover, contend Class Plaintiffs, regardless of the Court of Appeals's decision on the second issue raised by Defendants, "liability and damages discovery will be substantially unchanged" because proof of antitrust violations will not change, and proof of aggregate damages is the same regardless of who ultimately is eligible to recover. *Id.* at 2.

The likelihood of success on merits of the appeal at issue here actually has two layers. First, Defendants must succeed as a procedural matter in obtaining permission to appeal this Court's class certification order from the Court of Appeals. *See* Fed.R.Civ.P. 23(f). Second, assuming they obtain such permission, Defendants must next succeed as a substantive matter in showing a reversible error by this Court in granting class certification. It is extremely difficult, to say the least, for this Court to speculate about the outcomes of both matters in the unique circumstances of this case because each is comprised of issues of first impression.

Venturing a guess about the likelihood of success on obtaining permission from the Circuit to review the merits of this Court's class certification decision is problematic for at least two reasons. First, the Court of Appeals has not yet decided the standard it will apply to Rule 23(f) petitions; indeed, this case presumably will be used to set down the standard. Thus, this Court at the present time may look only to other circuits' guidance on the applicable standard, which may or may not be followed by this Circuit's Court of Appeals, thereby rendering such guidance equivocal and ultimately unsatisfying. Second, regardless of the standard fashioned, Rule 23(f) ultimately vests the Court of Appeals with "unfettered discretion" in granting Rule 23(f) review, Fed.R.Civ.P. 23(f) Advisory Committee Note, which only facilitates the unpredictability of whether Rule 23(f) review will be granted.

To the degree it must predict the likelihood of success, however, the Court believes Defendants are likely to obtain review under Rule 23(f). As mentioned above, in referring the matter to a merits panel in its September 28, 2001 Order, the Court of Appeals directed the parties to address the merits of the certification decision as well as whether the Rule 23(f) petition should be granted. In so doing,

the Court gave at least some indication of a willingness to address the merits of this Court's certification decision. This indication is bolstered by the fact that at oral argument the parties thoroughly addressed both standing arguments raised by Defendants in their Rule 23(f) petition—that is, the merits of this Court's decision—as well as the issue of whether the Rule 23(f) petition should be granted. More important, without expending considerable time wrestling (perhaps futilely) with the nuanced versions of the Rule 23(f) considerations articulated by the other circuits, the Court notes that one key factor that has been discussed in the relevant cases and is likely to be considered by the Court of Appeals is the existence of an important legal issue raised in a Rule 23(f) petition that needs immediate resolution, because the amendment to Rule 23 was designed to in part to clear up some fundamental issues about class actions. *See, e.g., Blair,* 181 F.3d at 835; *Sumitomo Copper Litig.,* 262 F.3d at 139. In this respect, as discussed above and as further discussed below, Defendants have raised two standing issues of considerable importance—namely, whether an exception to *Illinois Brick* direct purchaser rule applies when the FTC is permitted to pursue disgorgement pursuant to section 13(b) of the FTC Act, and alternatively, the proper definition of direct purchasers in this case given the complex purchasing arrangements involved. The former issue is one of first impression, and while the Court understands Class Plaintiffs' rejoinder that Defendants' have wrongfully attempted to bootstrap this argument to a class certification appeal under Rule 23(f), the issue nonetheless has been raised, briefed, and argued before the Court of Appeals. It thus may very well be considered part and parcel with the merits of Defendants' other standing argument since the question is unresolved and important not only to the proper disposition of this case but to future antitrust class actions as well. Similarly, issues of direct purchaser standing in the context of various complex purchasing arrangements potentially involving cost-plus contracts, for example, are not unique in antitrust class actions and could use guidance from the Court of Appeals. Ultimately, while attempting to predict whether the Court of Appeals will grant Defendants' Rule 23(f) petition is problematic, it seems more likely than not that the court will grant it in order to reach and resolve one of, or both, issues discussed above. *See, e.g., Blair,* 181 F.3d at 835 ("When the justification for interlocutory review is contributing to development of the law, it is less important to show that the district judge's decision is shaky. Law may develop through affirmance as well as through reversals.").

Attempting to discern the likely outcome of the underlying merits of this Court's class certification decision is similarly intractable. The Court's view of the merits of Defendants' standing arguments is clear from its previous decision, *Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. at 17–21, 22–25, and the Court will not revisit the arguments here. At the same time, however, the Court acknowledges the fact that the *Illinois Brick*/section 13(b) issue is one of first impression, and reasonable minds could differ on its proper resolution. The Court also acknowledges that unlike the circumstances it faced in rendering its decision, *see Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. at 23 & n. 8, Defendants conceded on appeal that at least one of the four named plaintiffs was a direct purchaser, thus enabling the parties and the Court of Appeals to engage in a more intelligent, meaningful, and constructive dialog about the intricacies of standing vis-à-vis the complex purchasing arrangements at issue in this case. While this Court ultimately is uncertain where all of this leaves the Court of Appeals in reviewing the merits of the class certification decision, it acknowledges that partial reversal is possible and not insignificant. As Defendants have argued, if the Court of Appeals disagrees with this Court about the *Illinois Brick*/section 13(b) issue, this case will be over. Needless to say, any discovery and ongoing litigation before this Court conducted between now and then would be a waste of all parties' and the Court's resources. And despite Class Plaintiffs' arguments to the contrary, the Court agrees with Defendants that the class size could be significantly altered even if the Court of Appeals only partially reverses on the issue of the proper definition of direct purchasers in this case.

Thus redefining the direct purchasers in this case could in turn affect certification and will undoubtedly significantly impact the scope of discovery respecting aggregate damages. In summary, the Court finds it difficult, if not impossible, to hypothesize the outcome of the merits underlying the Rule 23(f) petition pending before the Court of Appeals because of the novel issues raised in it and the various conceivable approaches the Court of Appeals could take in resolving them. Because partial reversal is a plausible outcome and the impact of such a reversal is potentially dispositive, however, the Court finds that this factor ultimately weighs in favor of a stay largely for the sake of preserving the resources of the parties and this Court.

The remaining factors provide little guidance on the issuance of a stay. The balance of harms favors neither side in this case. Given that the parties argued the case on March 12, 2002, a decision from the Court of Appeals can be expected in the very near future, likely in a couple of months. Defendants do not claim any cognizable prejudice from having to proceed with discovery; litigation expenses alone do not necessarily qualify as irreparable harm. *Cf., e.g., Wisconsin Gas*, 758 F.2d at 674. Class Plaintiffs contend that a delay in discovery itself constitutes substantial harm. This may be true as a general matter, but any inherent harm stemming from an approximately two-month stay, when juxtaposed to the potential magnitude of a decision by the Court of Appeals on the issues before it, is simply *de minimis*, especially in light of the fact that the parties recently stipulated to a similar stay in conjunction with their settlement efforts. The public interest factor is similarly unhelpful under the circumstances. On one hand, Class Plaintiffs have correctly noted the public interest in proceeding with, and resolving, this case given the significant allegations of price-fixing. On the other hand, the public interest really is rooted in the *proper* resolution of the important issues raised in this case, and a two-month stay to conserve the resources of all parties and the Court, resulting in no real prejudice to anyone, in order to ensure the proper legal result in this case is best aligned with that interest.

In summary, a flexible balancing of the factors considered above reveals that while the denial of a stay at this juncture would cause no irreparable harm as a matter of law, proceeding headlong with discovery and other matters before this Court has the very real potential of unnecessarily wasting significant resources of all parties (potentially even those of absent class members) and the Court, because two significant issues are currently pending before the Court of Appeals, one of which could dispose of this litigation while the other could substantially reshape it. A short stay of all matters pending a decision from the Court of Appeals therefore is warranted.

Because the Court will grant a stay, it will hold in abeyance Class Plaintiffs' motions to quash subpoenas issued to absent class members and to bifurcate trial until the Court of Appeals has rendered its decision on Defendants' Rule 23(f) petition.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to stay of all matters pending a decision by the Court of Appeals of the pending Rule 23(f) petition, and it thus will hold in abeyance Class Plaintiffs' motions. An appropriate order will accompany this Memorandum Opinion.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendants' motion to stay pending the Court of Appeals's resolution of the pending Rule 23(f) petition [# 190] is **GRANTED**. Accordingly, it is further

**ORDERED** that all matters are hereby **STAYED** pending resolution of Defendants' Rule 23(f) petition. It is further

**ORDERED** that the parties shall notify this Court immediately upon action taken by the Court of Appeals in relation to their Rule 23(f) petition. Finally, it is further

**ORDERED** that Class Plaintiffs' motions to quash subpoenas to absent class members [# 188] and to bifurcate trial [# 189] are

**HELD IN ABEYANCE** pending resolution of Defendants' Rule 23(f) petition.

**SO ORDERED.**